**ORAL ARGUMENT HELD NOVEMBER 10, 2021**

**No. 21-7003**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

PROCESS AND INDUSTRIAL DEVELOPMENTS LIMITED,

Petitioner-Appellee,

v.

FEDERAL REPUBLIC OF NIGERIA; MINISTRY OF PETROLEUM
RESOURCES OF THE FEDERAL REPUBLIC OF NIGERIA,

Respondents-Appellants.

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**BRIEF OF THE UNITED STATES AS AMICUS CURIAE**
———————————

BRIAN M. BOYNTON
  *Acting Assistant Attorney General*

MATTHEW M. GRAVES
  *United States Attorney*

SHARON SWINGLE
SARAH CLARK
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7216*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8727*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.      Parties and Amici

Respondents-appellants are the Federal Republic of Nigeria and the Ministry of Petroleum Resources of the Federal Republic of Nigeria.  Petitioner-appellee is Process and Industrial Developments Limited.  Amicus curiae is the United States of America.

### B.      Rulings Under Review

The ruling under review is the district court's December 4, 2020 memorandum opinion denying respondents-appellants' motion to dismiss for lack of subject-matter jurisdiction.  The district court's decision is reported at 506 F. Supp. 3d 1 (D.D.C. 2020) and is reprinted at Joint Appendix 450-65.

### C.      Related Cases

The United States is not aware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).  This case has been before the Court once before; that decision is reported at 962 F.3d 576 (D.C. Cir. 2020).

*/s/ Sarah Clark*
Sarah Clark

i

# TABLE OF CONTENTS

<u>**Page**</u>

TABLE OF AUTHORITIES ................................................................... iii

GLOSSARY ......................................................................................... vi

INTEREST OF AMICUS CURIAE ....................................................... 1

STATEMENT OF THE ISSUE ............................................................... 1

PERTINENT STATUTES AND REGULATIONS ................................. 1

STATEMENT OF THE CASE ............................................................... 1

    A.    Statutory and Treaty Background ........................................1

    B.    Procedural Background ........................................................4

ARGUMENT ......................................................................................... 5

I.    The Court should affirm the district court on the basis that the arbitration exception provides subject-matter jurisdiction here. .................... 5

II.    It is not necessary to reach the question of the United States' potential implied waiver of sovereign immunity ......................................... 14

CONCLUSION ..................................................................................... 16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Ackermann v. Levine*,
  788 F.2d 830 (2d Cir. 1986)....................................................................9

*Argentine Republic v. Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989) ...............................................................................1

*Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*,
  137 S. Ct. 1312 (2017) ...........................................................................8

*Cargill Int'l S.A. v. M/T Pavel Dybenko*,
  991 F.2d 1012 (2d Cir. 1993)...................................................................7

*Carney v. American Univ.*,
  151 F.3d 1090 (D.C. Cir. 1998) ..............................................................6

*Corporación Mexicana De Mantenimiento Integral, S. De. R.L. De C.V. v. Pemex-Exploración Y Producción*,
  832 F.3d 92 (2d Cir. 2016) .....................................................................9

*Creighton Ltd. v. Government of the State of Qatar*,
  181 F.3d 118 (D.C. Cir. 1999) ...........................................................1, 7

*de Csepel v. Republic of Hungary*,
  714 F.3d 591 (D.C. Cir. 2013) ...................................................6, 13, 14

*D. Ginsberg & Sons v. Popkin*,
  285 U.S. 204 (1932)..............................................................................11

*Diag Human, S.E. v. Czech Republic–Ministry of Health*,
  824 F.3d 131 (D.C. Cir. 2016) ...............................................................7

*Duncan v. Walker*,
533 U.S. 167 (2001)...............................................................................11

*Fourco Glass Co. v. Transmirra Prods. Corp.*,
  353 U.S. 222 (1957) .............................................................................11

*Process & Indus. Devs. Ltd. v. Federal Republic of Nigeria*,
  962 F.3d 576 (D.C. Cir. 2020) ................................................................5

*Tatneft v. Ukraine*,
  771 F. App'x 9 (D.C. Cir. 2019) ........................................................ 13

*TRW Inc. v. Andrews*,
  534 U.S. 19 (2001) ........................................................................... 11

**Treaties:**

United Nations Convention on the Jurisdictional Immunities of States
  and Their Property, art. 17, Dec. 2, 2004 (not in force),
  https://perma.cc/7ZEF-UJWB ...........................................................15

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
  https://perma.cc/4Y3P-D4WL ..........................................................3, 9

**Statutes:**

28 U.S.C. § 1330 ................................................................................ 1-2

28 U.S.C. § 1604 ................................................................................ 1-2

28 U.S.C. § 1605(a) ............................................................................. 7

28 U.S.C. § 1605(a)(1) ............................................................. 2, 10, 11

28 U.S.C. § 1605(a)(3) ......................................................................... 8

28 U.S.C. § 1605(a)(6) ......................................................... 3, 6, 7, 8, 10

28 U.S.C. § 1605(a)(6)(A)-(C) .......................................................... 6, 10

28 U.S.C. § 1605(a)(6)(B) .................................................................... 6

An Act to Implement the Inter-American Convention on International
  Commercial Arbitration,
  Pub. L. No. 100-669, § 2, 102 Stat. 3969, 3969 (1988)...........................3

Federal Arbitration Act,
  9 U.S.C. §§ 201-208 ........................................................................... 3

iv

Foreign Sovereign Immunities Act of 1976,
   Pub. L. No. 94-583, § 4(a), 90 Stat. 2891, 2892-93...............................................2

**Legislative Materials:**

*Arbitral Awards: Hearing on H.R. 3106, H.R. 3137, H.R. 4342,
   and H.R. 4592 Before the Subcomm. on Administrative Law
   and Gov't Relations of the H. Comm. on the Judiciary*,
   99th Cong. 32 (1986) ...........................................................................................12

132 Cong. Rec. 28,800 (1986) ...............................................................................11

H.R. 3137, 99th Cong. (1985)................................................................................ 12

H.R. 1888, 100th Cong. (1987).............................................................................. 12

**Other Authority:**

Dep't of Justice, *Office of Foreign Litigation*, https://go.usa.gov/xtB5C
   (updated Aug. 27, 2021) .....................................................................................15

## GLOSSARY

| | |
|---|---|
| FSIA | Foreign Sovereign Immunities Act |
| JA | Joint Appendix |
| New York Convention | Convention on the Recognition and Enforcement of Foreign Arbitral Awards |
| Nigeria | Federal Republic of Nigeria and Ministry of Petroleum Resources of the Federal Republic of Nigeria |
| P&ID | Process and Industrial Developments Limited |

## INTEREST OF AMICUS CURIAE

The United States submits this amicus brief at the invitation of the Court. The United States has an interest in ensuring that courts correctly interpret the Foreign Sovereign Immunities Act (FSIA), as U.S. courts' application of the FSIA can have implications for the treatment of the United States in foreign courts and for our relations with foreign states. The United States also has an interest in encouraging the reliable and efficient enforcement of international arbitral awards in aid of international commerce, while giving proper consideration to the judicial proceedings and judgments of other nations.

## STATEMENT OF THE ISSUE

Does the FSIA provide the district court with subject-matter jurisdiction in this case?

## PERTINENT STATUTES AND REGULATIONS

The pertinent statutory text is reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory and Treaty Background

**1.** "The FSIA is 'the sole basis for obtaining jurisdiction over a foreign state'" in U.S. courts. *Creighton Ltd. v. Government of the State of Qatar*, 181 F.3d 118, 121 (D.C. Cir. 1999) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989)). A foreign state is immune from the jurisdiction of the district court unless one of the FSIA's exceptions to immunity applies. 28 U.S.C.

§§ 1330(a), 1604.  Two exceptions are at issue here:  the waiver exception and the arbitration exception.

The waiver exception applies in any case "in which the foreign state has waived its immunity either explicitly or by implication," 28 U.S.C. § 1605(a)(1). The waiver exception has been a part of the FSIA since the Act's passage in 1976. Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94-583, § 4(a), 90 Stat. 2891, 2892-93.

The arbitration exception applies in any case brought "to enforce an agreement made by the foreign state with or for the benefit of a private party" to arbitrate "all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States," or "to confirm an award made pursuant to such an agreement to arbitrate" if

> (A) the arbitration takes place or is intended to take place in the United States,
>
> (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards,
>
> (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or
>
> (D) paragraph (1) of this subsection is otherwise applicable.

2

28 U.S.C. § 1605(a)(6) (line breaks added). Congress added the arbitration exception to the FSIA in 1988. *See* An Act to Implement the Inter-American Convention on International Commercial Arbitration, Pub. L. No. 100-669, § 2, 102 Stat. 3969, 3969 (1988).

**2.** The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York Convention) is a multilateral treaty that establishes a regime for enforcement in Contracting States of international commercial arbitration agreements and awards. In relevant part, the New York Convention provides that "[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon." New York Convention, art. III. The United States acceded to the New York Convention on September 30, 1970, and the Convention entered into force for the United States on December 29, 1970. The Federal Republic of Nigeria and the United Kingdom are also Contracting States to the New York Convention. *See* Convention on the Recognition and Enforcement of Foreign Arbitral Awards, https://perma.cc/4Y3P-D4WL (last updated Jan. 12, 2022). In the United States, the Convention has been implemented through Chapter Two of the Federal Arbitration Act, 9 U.S.C. §§ 201-208.

**B.    Procedural Background**

This case arises from an arbitration in the United Kingdom between Nigeria and Process and Industrial Developments Limited (P&ID).  A decade ago, P&ID and Nigeria entered into a natural gas processing contract containing an arbitration provision.  Joint Appendix (JA) 37, 51-52.  When a dispute arose, P&ID initiated arbitration in the United Kingdom.  The arbitration resulted in a 2015 liability award concluding that Nigeria had breached the contract and a 2017 final award requiring Nigeria to pay approximately $6.6 billion dollars in damages, plus interest.  JA 144, 162, 271, 303-04.

Before the arbitral tribunal issued the final award, Nigeria made two attacks on the liability award.  Its first, before the High Court of Justice in London, was rejected as untimely.  JA 200.  Its second, before the Federal High Court in Nigeria, resulted in a spare order "setting aside and/or remitting for further consideration all or part of the arbitration Award."  JA 245.  The U.K. arbitral tribunal subsequently concluded that the Nigerian court lacked authority to set aside the liability award and proceeded to issue its final award.  Although the High Court of Justice in London ruled in 2019 that the final award was enforceable, it has since granted Nigeria's request to challenge the award based on newly discovered evidence of fraud in the arbitration and in the underlying contract negotiations.  JA 356, 437, 444.  Those proceedings are ongoing.

4

Meanwhile, P&ID petitioned for confirmation of the final award in U.S. district court, asserting subject-matter jurisdiction under the FSIA's waiver and arbitration exceptions. JA 14-15. Nigeria moved to dismiss.[1] According to the district court, the arbitration exception implicated "complex issues" about the validity of the award and about whether validity was a jurisdictional question or a merits one. JA 457-58 n.1. The district court ultimately declined to decide whether the arbitration exception applied, instead reasoning that jurisdiction existed under the waiver exception because Nigeria had implicitly waived its sovereign immunity by becoming party to the New York Convention and agreeing to arbitrate in the territory of a Convention state. JA 450.

This appeal followed. After oral argument, the Court invited the United States to file a brief as amicus curiae.

## ARGUMENT

### I.     The Court should affirm the district court on the basis that the arbitration exception provides subject-matter jurisdiction here.

The FSIA's arbitration exception provides subject-matter jurisdiction in this case. Given that, it is unnecessary to decide whether the waiver exception also

---

[1] The motion to dismiss and ruling at issue here followed the first interlocutory appeal in this case, in which the Court directed the district court to resolve the immunity issue before requiring Nigeria to defend its position on the merits. *Process & Indus. Devs. Ltd. v. Federal Republic of Nigeria*, 962 F.3d 576, 586-87 (D.C. Cir. 2020).

applies—a question that raises difficult questions of statutory construction and could also implicate adverse reciprocity concerns were foreign courts to take a broad view of waiver in cases brought against the United States. The Court should therefore affirm, on the basis of the arbitration exception, the district court's decision denying dismissal for lack of subject-matter jurisdiction. *See de Csepel v. Republic of Hungary*, 714 F.3d 591, 598 (D.C. Cir. 2013) (explaining that the Court may affirm the judgment of the district court "on any basis supported by the record" (quoting *Carney v. American Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998))).

**1.** The conditions of the arbitration exception are satisfied here. The arbitration exception applies in cases "in which the action is brought . . . to confirm an award made pursuant to" an arbitration agreement "made by the foreign state with or for the benefit of a private party" to arbitrate disagreements that arise "with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States," 28 U.S.C. § 1605(a)(6), if the award "is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards," *id.* § 1605(a)(6)(B).

Nigeria does not dispute that the award is "governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards," 28 U.S.C. § 1605(a)(6)(B). Nor could it, as the

6

New York Convention governs the award and "the New York Convention 'is exactly the sort of treaty Congress intended to include in the arbitration exception.'" *Creighton Ltd. v. Government of the State of Qatar*, 181 F.3d 118, 123-24 (D.C. Cir. 1999) (quoting *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1018 (2d Cir. 1993)).

Nigeria's only argument against the arbitration exception's application is the purported invalidity of the arbitral award. *See* Reply Br. 14-18. But the award need not be valid to provide the district court with jurisdiction under the arbitration exception, as the validity of an arbitral award is a merits question. *See Diag Human, S.E. v. Czech Republic–Ministry of Health*, 824 F.3d 131, 137-38 (D.C. Cir. 2016). In *Diag Human*, the arbitral award in question had been reversed by an appellate arbitration panel, but "the legitimacy of that reversal" was disputed by the parties. *Id.* at 137. The Court held that this dispute did not affect the district court's subject-matter jurisdiction, because "[w]hether the arbitration award is final will be a question going to the merits of the case." *Id.* at 138. So too here.

This reading is rooted in the text of the arbitration exception. On its face, the exception requires only an "award," 28 U.S.C. § 1605(a)(6), not a "valid award." Moreover, the arbitration exception applies in "any case . . . in which the action is brought . . . to confirm an award made pursuant to" a qualifying arbitration agreement. *Id.* § 1605(a), (a)(6). The exception ties jurisdiction to the goal of the

7

suit, not to its likelihood of success.  Under the arbitration exception, as long as a party can establish the existence of an award under normal pleading standards, it establishes a basis for the court's exercise of jurisdiction under the arbitration exception, provided the other requirements of § 1605(a)(6) are satisfied.

The Supreme Court's decision in *Bolivarian Republic of Venezuela v. Helmerich & Payne International Drilling Co.*, 137 S. Ct. 1312 (2017), is not to the contrary.  There, the Court held that a district court may not find jurisdiction under the FSIA's expropriation exception without deciding whether "rights in property taken in violation of international law are in issue," 28 U.S.C. § 1605(a)(3), not just whether there is a "nonfrivolous argument" that the property had been taken in violation of international law.  *Helmerich*, 137 S. Ct. at 1316.  *Helmerich*'s holding was specific to the text of the expropriation exception.  *Id.* at 1319.  Under that exception, the rights in question need not ultimately exist to provide jurisdiction—they must only be "in issue" at the jurisdictional stage—but the asserted rights must be of the correct type, *i.e.*, "rights in property taken in violation of international law." *Id.* (quoting 28 U.S.C. § 1605(a)(3)).  If the asserted rights are not the correct type, the expropriation exception cannot provide jurisdiction.  The text of the arbitration exception similarly governs here.  It requires an "action . . . brought . . . to confirm an award," 28 U.S.C. § 1605(a)(6)—it does not require a threshold jurisdictional

determination that the award is confirmable, *i.e.*, valid, as that is a question for the merits phase of the litigation.

Requiring a valid award to establish jurisdiction under the arbitration exception would also be in tension with the enforcement scheme established by the New York Convention and implementing legislation, under which an award that has been set aside by a foreign court may nevertheless be enforceable in a U.S. court. The Convention states that a court "may"—not "must"—refuse to recognize or enforce an award that "has been set aside or suspended by a competent authority." *See* New York Convention, art. V(1)(e). Put differently, a court may agree to recognize or enforce an award that has been set aside by a competent authority, if crediting the set-aside order would be "repugnant to fundamental notions of what is decent and just" and therefore offend the public policy of the United States. *See Corporación Mexicana De Mantenimiento Integral, S. De. R.L. De C.V. v. Pemex-Exploración Y Producción*, 832 F.3d 92, 105-07 (2d Cir. 2016) (quoting *Ackermann v. Levine*, 788 F.2d 830, 841 (2d Cir. 1986)) (holding that the district court did not abuse its discretion in confirming an arbitral award that had been invalidated in Mexican court). Requiring a valid award at the outset would preclude that possibility.

**2.** Because the district court had jurisdiction over this action under the FSIA's arbitration exception, it is unnecessary for the Court to decide whether it could also

9

exercise jurisdiction over an action to enforce an arbitral award under the general waiver exception, 28 U.S.C. § 1605(a)(1)—a difficult question of statutory construction with potential consequences for the United States in foreign courts.

Traditional canons of statutory construction suggest that the arbitration exception was intended to displace the waiver exception, at least for arbitration agreements and arbitral awards that come within its ambit. Subparagraph (D) of § 1605(a)(6) provides that, if the arbitration agreement meets the other statutory requirements, jurisdiction exists over a petition to confirm an arbitral award where "paragraph (1) of this subsection is otherwise applicable." 28 U.S.C. § 1605(a)(6). "[P]aragraph (1) of this subsection" is the waiver exception. *See id.* § 1605(a)(1). Subparagraphs (A) through (C) of the arbitration exception identify specific scenarios in which jurisdiction exists—where the arbitration takes place in the United States, for example, or where the award is governed by the New York Convention. *See id.* § 1605(a)(6)(A)-(C). Subparagraph (D), on the other hand, captures awards that do not fall within the other specified scenarios but do involve an express or implied waiver of sovereign immunity.

If the waiver exception were able to support jurisdiction in arbitration cases, Subparagraph (D) would be entirely superfluous. A party that could establish an express or implied waiver of sovereign immunity, such that subparagraph (D) is satisfied, would necessarily also satisfy the waiver exception. Indeed, by going

10

through the waiver exception, the party would avoid the need to satisfy any of the arbitration exception's other preconditions. Statutory interpretation principles counsel against this result. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (noting "cardinal principle" against construing statutory text as superfluous (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))). Statutory interpretation principles also suggest that the specific guidance of the arbitration exception as to when a court can exercise jurisdiction in arbitration cases involving waiver should supplant the general terms of the otherwise-applicable waiver exception, 28 U.S.C. § 1605(a)(1). *See Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 228-29 (1957) ("Specific terms prevail over the general in the same or another statute which otherwise might be controlling." (quoting *D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208 (1932))).

The legislative history sheds light on Congress' intent as well. The arbitration exception was added in 1988 to clarify courts' jurisdiction to enforce arbitration agreements and confirm arbitral awards. Before the amendment, courts were, for the most part, applying the FSIA's waiver exception in 28 U.S.C. § 1605(a)(1) to "find[] that arbitral agreements constitute[d] waivers in the appropriate cases." 132 Cong. Rec. 28,800 (1986) (statement of Sen. Lugar). Some confusion remained, however, and so the arbitration exception was intended to provide "explicit guidance to judges in dealing with these issues." *Id.*

11

Earlier drafts of the amendment included versions of only subparagraphs (A) through (C). *See, e.g.*, H.R. 3137, 99th Cong. (1985); H.R. 1888, 100th Cong. (1987). Commenting on this approach, the State Department noted at the time that "the amendment should be drafted to leave open the possibility of courts finding implicit waiver in other appropriate circumstances, should they arise." *Arbitral Awards: Hearing on H.R. 3106, H.R. 3137, H.R. 4342, and H.R. 4592 Before the Subcomm. on Administrative Law and Gov't Relations of the H. Comm. on the Judiciary*, 99th Cong. 32 (1986) (1986 Hearing) (statement of Elizabeth G. Verville, Deputy Legal Adviser, U.S. Dep't of State). In other words, "the three proposed circumstances should not become an exclusive list of conditions in which courts may enforce arbitral agreements and awards." *Id*. The Justice Department similarly recommended that, in addition to the three specific scenarios set out in the arbitration exception, "courts should retain the ability afforded them under current law to make case-by[-]case assessments of the relevant factors to determine if the foreign sovereign has implicitly waived immunity" under § 1605(a)(1). 1986 Hearing, 99th Cong. 69 (statement of Stuart E. Schiffer, Deputy Assistant Attorney General, Civil Division, U.S. Dep't of Justice).

Congress responded to these suggestions by expressly incorporating a waiver provision in the new arbitration exception. One plausible construction of that provision is that it reflects Congress' intent to require that a court exercising

12

jurisdiction to enforce an arbitration agreement or arbitral award on the basis of implied or express waiver do so only where the threshold requirements of the arbitration exception have been met.

On the other hand, construing § 1605(a)(6) as exclusive would mean that a court lacks jurisdiction to enforce an arbitration agreement that is not made "with or for the benefit of a private party," despite the lack of evidence of Congress' intent to foreclose jurisdiction in those circumstances.  This Court's unpublished decision in *Tatneft v. Ukraine*, 771 F. App'x 9 (D.C. Cir. 2019), rejected that construction, instead reading the waiver exception and arbitration exception as nonexclusive—albeit without addressing the fact that its reading of the statute would render § 1605(a)(6)(D) entirely superfluous.  *Id.* at 10.

In any event, the Court need not decide these thorny issues in this case because the arbitration exception squarely applies—P&ID has brought an action to confirm an arbitral award governed by the New York Convention.  The Court should therefore affirm the district court's finding of subject-matter jurisdiction on that alternate ground alone.  The Court took a similar approach in *de Csepel v. Republic of Hungary*.  There, plaintiffs asserted jurisdiction under the FSIA's expropriation and commercial activity exceptions.  *de Csepel*, 714 F.3d at 597.  The district court found jurisdiction under the expropriation exception, but this Court—"without ruling on the availability of the expropriation exception"—concluded that plaintiffs'

13

claims fell "comfortably within the FSIA's commercial activity exception." *Id.* at 598. Here, similarly, where the application of the arbitration exception is plain, affirmance on that ground is appropriate.

## II.    It is not necessary to reach the question of the United States' potential implied waiver of sovereign immunity.

The Court also invited the United States to provide its views on whether it "impliedly waives sovereign immunity from actions seeking the recognition and enforcement of foreign arbitral awards in the courts of other New York Convention states by becoming a party to the Convention and agreeing to arbitrate a dispute in a Convention state." Order (Nov. 15, 2021).

As explained above, the Court can and should resolve this case under the arbitration exception. There is no need, therefore, to decide whether the FSIA's waiver exception applies to an action to enforce an arbitral award in the United States—a New York Convention state—based on Nigeria's agreement to arbitrate in another New York Convention state. And whether the United States has impliedly waived its immunity for purposes of an action against it in a foreign court is a further step removed from that statutory question and the facts of this case.

The United States has not, to its knowledge, taken a position on this question, though it would generally urge foreign courts to reject a finding that the United States had implicitly waived its sovereign immunity. As a Contracting State, the United States has an interest in the vitality of the New York Convention and in the

14

ability of its courts to enforce covered arbitral awards.  But  addressing the question posed by the Court here could have potential reciprocal consequences.  Although United States courts exercise restraint in construing implied waivers, other countries may not do so.  The United States is not infrequently sued in foreign courts—"[a]t any given time, foreign lawyers under [the Office of Foreign Litigation's] direct supervision represent the United States in approximately 1,800 lawsuits pending in the courts of over 100 countries."  *See* Dep't of Justice, *Office of Foreign Litigation*, https://go.usa.gov/xtB5C (updated Aug. 27, 2021).  Taking the position that the United States has implicitly waived its sovereign immunity could disfavor the United States as a litigant, particularly in those countries that may otherwise provide for foreign sovereign immunity in such circumstances.

The United States further notes that some jurisdictions may allow for sovereign immunity in circumstances covered by the arbitration exception.  The United Nations Convention on the Jurisdictional Immunities of States and Their Property, for example, provides a more limited exception, which denies sovereign immunity only for an action in the state in which the arbitration is seated that seeks judicial supervision over the arbitration (or to nullify an arbitral award)—*not* an exception for any action to recognize and enforce an arbitral award from an arbitral tribunal seated in another Contracting State.  *See* United Nations Convention on the

15

Jurisdictional Immunities of States and Their Property, art. 17, Dec. 2, 2004 (not in force), https://perma.cc/7ZEF-UJWB.

Because the hypothetical question whether the United States waives its sovereign immunity by becoming a party to the New York Convention and agreeing to arbitrate in a New York Convention state is entirely distinct from the statutory interpretation question decided by the district court—which itself is unnecessary to decide on appeal—the United States declines to take a position on that question here.

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Acting Assistant Attorney General*
MATTHEW M. GRAVES
  *United States Attorney*

SHARON SWINGLE

 */s/ Sarah Clark*
SARAH CLARK
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7216*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8727*
  *sarah.clark@usdoj.gov*

January 2022

16

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's November 15, 2021 order because it contains 3,627 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Times New Roman 14-point font, a proportionally spaced typeface.

*/s/ Sarah Clark*
Sarah Clark

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

*/s/ Sarah Clark*
Sarah Clark

**ADDENDUM**

# TABLE OF CONTENTS

28 U.S.C. § 1604 .................................................................................A1

28 U.S.C. § 1605 .................................................................................A1

**28 U.S.C. §§ 1604-05**

**§ 1604.**

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

**§ 1605.**

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver; [or]

\*    \*    \*

(6) in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable.